No. 2--02--0816

______________________________________________________________________________

IN THE 

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

______________________________________________________________________________

TODD RANDICH,
  
)
 
Appeal from the Circuit

  
)
 
Court of Du Page County.
 

Plaintiff-Appellant,
  
)

  
)
 

  
)
   
No. 01--L--332
 

  
)

PIRTANO CONSTRUCTION COMPANY,
  
 )

INC., and UTILITY CONSTRUCTORS,
  
)

INC.,
  
)
 

  
)
 

Defendants-Appellees
  
)
 

  
)
 
Honorable

(Northern Illinois Gas Company,
  
)
 
Kenneth Moy,

a/k/a NICOR, Defendant).
  
)
 
Judge, Presiding.
 

______________________________________________________________________________

JUSTICE BOWMAN delivered the opinion of the court:

This appeal arises from the dismissal of the amended complaint filed by plaintiff, Todd Randich, against defendants, Pirtano Construction Company, Inc. (Pirtano) and Utility Constructors, Inc. (Utility), alleging negligence and willful and wanton misconduct.  We affirm in part, reverse in part, and remand.  

The trial court dismissed plaintiff’s amended complaint under section 2--619(a)(9) of the Code of Civil Procedure (Code) (735 ILCS 5/2--619(a)(9) (West 2000)).  Accordingly, the well-pleaded facts from the amended complaint are accepted as true.  
Zimmerman v. Fasco Mills Co.
, 302 Ill. App. 3d 308, 311 (1998).  The following recitation of the facts is based on the pleadings and the trial court's order.   

Defendants are construction contractors.  On April 29, 1999, they were working for Western Cable Communications (Western) installing underground television cable along a public utility easement granted to Western at the Wespark housing subdivision in Romeoville.  Defendants' employees laid the cable underground through the use of a directional boring machine.  In the process of boring into the ground, defendants' employees punctured a natural gas main.  

Northern Illinois Gas Company (NICOR) employees and members of the Lockport Fire Protection District (LFPD) were dispatched to the scene to contend with the gas leak and ensure safety.  Plaintiff, an emergency medical technician (EMT), was one of the members of the LFPD sent to the scene.

Plaintiff was in the vicinity of the leaking gas when it was ignited by an unknown source within the housing development.  A resulting explosion and fire completely destroyed two houses and damaged several others.  More important, several NICOR employees and members of the LFPD were injured.  Plaintiff was among the members of the LFPD who were injured in the explosion, sustaining "serious and permanent injuries."  

On November 14, 2001, plaintiff filed his amended complaint alleging negligence and willful and wanton misconduct on the part of defendants.  Specifically, plaintiff's negligence claim alleges that defendants failed to (1) investigate and ascertain the precise location of underground gas mains in the vicinity where they were operating the directional boring machine; (2) properly expose the gas main by hand digging before boring into the ground; and (3) arrange with NICOR in advance to turn off the gas prior to digging.  Plaintiff's claim of willful and wanton misconduct basically sets forth the same factual allegations as the negligence claim, but adds that defendants acted with actual knowledge that a gas main was located within the utility easement where defendants were conducting their drilling activities.  

In response, defendants filed a motion to dismiss under section 2--619(a)(9) of the Code (735 ILCS 5/2--619(a)(9) (West 2000)).  The court granted the motion and dismissed plaintiff's claims against defendants on the ground that the fireman's rule prohibited plaintiff's cause of action.  Plaintiff also alleged negligence on the part of NICOR.  However, NICOR was not a party to the motion to dismiss.  Thus, the court dismissed only the claims against Pirtano and Utility and further found that there was no just reason to delay enforcement or appeal of the dismissal order.  Thereafter, plaintiff filed a timely notice of appeal under Supreme Court Rule 304(a) (155 Ill. 2d R. 304(a)), which allows appeals from final judgments that do not dispose of the entire proceeding.

On appeal, plaintiff asserts that defendants cannot avail themselves of the fireman's rule because (1) the rule does not bar actions based on willful and wanton misconduct; (2) defendants are not considered owners or occupiers of Western's utility easement; (3) public policy and the development of the deliberate encounter doctrine abrogate the fireman's rule; and (4) the application of the rule violates plaintiff's equal protection rights.        .   

As an initial matter, section 2--619(a)(9) allows involuntary dismissal where "the claim asserted against defendant is barred by other affirmative matter avoiding the legal effect of or defeating the claim."  735 ILCS 5/2--619(a)(9) (West 2000).  Accordingly, defendants admit the legal sufficiency of plaintiff's amended complaint but assert that the fireman's rule defeats plaintiff's claims.  See 
Zimmerman
, 302 Ill. App. 3d at 311.  Our standard of review of a section 2--619 dismissal is 
de
 
novo
.  
Zimmerman
, 302 Ill. App. 3d at 311.

The fireman's rule limits the extent to which firefighters or other public officers are allowed to recover for injuries incurred when, in an emergency, they enter upon an owner's or occupier's property in discharge of their duty.  
McShane v. Chicago Investment Corp.
, 235 Ill. App. 3d 860, 864 (1992).  It provides that "an owner or occupier of land must exercise reasonable care to prevent injury to firemen that might result from a cause independent of the fire, but has no duty to prevent injury resulting from the fire itself."  
Vroegh v. J&M Forklift
, 165 Ill. 2d 523, 527 (1995).  Thus, the rule limits a fireman's right to recover for injuries arising out of the fire itself.  
McShane
, 235 Ill. App. 3d at 865.

The first issue in this case is whether the fireman's rule bars a cause of action based on willful and wanton misconduct.  In Illinois, there is conflicting authority on this issue.  Where a legal question has been the subject of decisions with varying results, we will carefully examine what has been said by courts on the subject.  
Scott v. Instant Parking, Inc.
, 105 Ill. App. 2d 133, 135 (1969). 

The fireman's rule is a creature of case law, and thus the pertinent case law must be analyzed to understand and properly apply the rule.  
Zimmerman
, 302 Ill. App. 3d at 312.  Originally, the fireman's rule developed under the English common law during the existence of the feudal system of landownership.  
Dini v. Naiditch
, 20 Ill. 2d 406, 413 (1960).  Under this system, a firefighter was labeled as a licensee to whom the owner or occupant owed no greater duty than to refrain from the infliction of willful or intentional injury.  
Dini
, 20 Ill. 2d at 413-14.  In Illinois, the supreme court in 
Gibson v. Leonard
, 143 Ill. 182, 189 (1892), adopted this English common-law rule.  

Later, in  
Dini
, our  supreme court reshaped the fireman's rule to address what had been characterized as a barbaric formulation of the rule.  
Dini
, 20 Ill. 2d at 414.  In 
Dini
, an inadequately constructed wooden staircase in the defendant's building collapsed and resulted in injury to several firefighters.  
Dini
, 20 Ill. 2d at 412.  Our supreme court rejected the common-law rule labeling firemen as licensees, finding it to be an illogical anachronism, originating in a vastly different social order, and pock-marked by judicial refinements.  
Dini
, 20 Ill. 2d at 416.  Instead, recognizing that firemen confer on landowners economic and other benefits that form a basis for imposing the common-law duty of reasonable care, the court held: 

"[A]n action should lie against a landowner for failure to exercise reasonable care in the maintenance of his property resulting in the injury or death of a fireman rightfully on the premises, fighting the fire at a place where he might reasonably be expected to be."  
Dini
, 20 Ill. 2d at 416-17.

Then, in 
Washington v. Atlantic Richfield Co.
, 66 Ill. 2d 103 (1976), the supreme court refined the reasonable care standard set forth in 
Dini
.  In 
Washington
, firemen were seriously injured in the process of extinguishing a car fire at a service station.  
Washington
, 66 Ill. 2d at 104.  The court was faced with the issue of whether the "liability of a possessor of land for injuries to a fireman extends to acts of negligence which cause a fire."  
Washington
, 66 Ill. 2d at 105.  In response, the court held that "while a landowner owes a duty of reasonable care to maintain his property so as to prevent injury occurring to a fireman from a cause independent of the fire he is not liable for negligence in causing the fire itself."  
Washington
, 66 Ill. 2d at 108.  Thus, from 
Washington
, the current form of Illinois's version of the fireman's rule was born.  It permits a firefighter to recover for injuries that result from an act unrelated to the specific reason he was summoned to the scene, but not for negligent acts that caused the emergency.  This then leads to the issue of whether a fireman can recover for willful and wanton misconduct that causes an emergency. 

As stated above, under the common-law version of the fireman's rule, as adopted in 
Gibson
, a plaintiff could recover for the infliction of willful or intentional injury.  See 
Dini
, 20 Ill. 2d at 416.  In 
Bandosz v. Daigger & Co.
, 255 Ill. App. 494 (1930), the court affirmed a judgment in favor of an administratrix of an estate of a fireman killed when a building exploded as a proximate result of the defendant's willful and wanton misconduct.  The court recognized the principle that an owner or occupier of property is liable for willful and wanton misconduct to a firefighter in discharge of his duty.  
Bandosz
, 255 Ill. App. 494.   

In 1975, one year before the supreme court's decision in 
Washington
 was released, the Appellate Court, Third District, in 
Marquart v. Toledo, Peoria & Western R.R. Co.
, 30 Ill. App. 3d 431, 432 (1975), addressed a situation in which a firefighter sued to recover for injuries incurred while fighting a fire that began with the explosion of a railroad car containing liquified propane gas.  There, the court stated that "a fireman may recover where the injuries were caused by the willful and wanton misconduct of the owner or occupant of premises where the fire occurred."  
Marquart
, 30 Ill. App. 3d at 434.  

Contrary to the position taken in 
Bandosz
 and 
Marquart
, in 
Luetje v. Corsini
, 126 Ill. App. 3d 74 (1984), the Appellate Court, First District, held that a homeowner was not liable for willful and wanton misconduct where a firefighter alleged that "certain wilful and wanton misconduct on the part of defendants in the maintenance of their building caused the fire in question and that, as a result of the fire, a chimney collapsed, causing injury to plaintiff."  
Luetje
, 126 Ill. App. 3d at 78.  The court noted that the supreme court's ruling in 
Washington
 distinguished between negligent acts that may cause an emergency situation and independent acts of negligence.  
Luetje
, 126 Ill. App. 3d at 79.  From this, the court in 
Luetje
 reasoned that the nature of a defendant's conduct is not determinative of the issue of landowner liability to an injured firefighter.  
Luetje
, 126 Ill. App. 3d at 79.  Thus, the court concluded that it was irrelevant whether the plaintiff's injuries stemmed from negligent acts or willful and wanton misconduct.  
Luetje
, 126 Ill. App. 3d at 79.  If the defendant's alleged wrongdoing related to the cause of the emergency, the plaintiff was barred from recovering under the fireman's rule.  
Luetje
, 126 Ill. App. 3d at 79.  In making this logical leap from the holding in 
Washington
, which addressed only a claim of negligence, 
Luetje
 relied on 
Young v. Toledo, Peoria & Western  R.R. Co.
, 46 Ill. App. 3d 167 (1977).  
Luetje
, 126 Ill. App. 3d at 79.  The Appellate Court, First District, later affirmed this position in 
Coglianese v. Mark Twain Ltd. Partnership
, 171 Ill. App. 3d 1, 6 (1988). 

We decline to follow the position taken by the court in 
Luetje
 for several reasons.  First, 
Luetje
 misconstrues the cases it uses to support its position.  
Luetje
 states that the court in 
Young
 dismissed the plaintiff's willful and wanton misconduct claim because the allegations related solely to the cause of the fire.  
Luetje
, 126 Ill. App. 3d at 79.  Rather, the court in 
Young
 actually dismissed the plaintiff's willful and wanton misconduct claim because the allegations in the complaint related only "to acts of negligence" and fell "short of stating a cause of action on wilful and wanton misconduct."  
Young
, 46 Ill. App. 3d at 169.  

Moreover, we reject 
Luetje
's contention that it was the intention of the supreme court in 
Washington
 to erect a wall separating recovery for willful and wanton misconduct between independent causes of harm and acts that cause the emergency itself.  The court in 
Washington
 stated: "The question presented by this appeal is whether the liability of a possessor of land for injuries to a fireman extends to acts of 
negligence
 which cause the fire." (Emphasis added.)  
Washington
, 66 Ill. 2d at 105.  In reaching its holding, 
Washington
 relied on appellate court cases interpreting 
Dini
.  
Washington
, 66 Ill. 2d at 108.  The court noted that the position taken in these cases was the same as that taken in virtually every other jurisdiction in which the question had been considered.  
Washington
, 66 Ill. 2d at 108.  The court in 
Marquart
 also considered the same appellate decisions as the supreme court in  
Washington
 and stated that the "recent decisions in cases where a fireman sought to recover for injuries received while fighting a fire have all been actions based on negligence, and do not purport to change the rule which permits recovery based on wilful and wanton misconduct."  
Marquart
, 30 Ill. App. 3d at 434.  We think that the supreme court in 
Washington
 merely intended to articulate the current state of the law relating to the fireman's rule and negligence actions.  If the supreme court had intended to create an absolute separation between actions causally connected to an emergency and independent actions, it would have been a simple matter to articulate the rule in such a broad fashion.  Rather, we conclude that the holding in 
Washington
 did not create a bar to claims of willful and wanton misconduct when they relate to the cause of the emergency.

This expression of the fireman's rule comports with the purpose of the rule as articulated by the supreme court and recognizes that the current trend in the law favors amelioration of the harsh effects of the rule.  In 
Court v. Grzelinski
, 72 Ill. 2d 141 (1978), the supreme court held that the fireman's rule does not protect a defendant from a products liability action.  The court observed the public policy considerations that shaped the fireman's rule in Illinois.  
Court
, 72 Ill. 2d at 148.  It stated that "[s]ince most fires occur because of the 
negligence
 of the landowner or occupier, it was believed that the imposition of a duty to prevent fires from occurring or spreading on a person's premise would place an unreasonable burden upon the person who owned or occupied improved land."  (Emphasis added.)  
Court
, 72 Ill. 2d at 148.  However, this public policy consideration tended to undermine the duty of reasonable care placed upon a landowner or occupier.  
Court
, 72 Ill. 2d at 148.  "A compromise was reached with regard to firemen, recognizing that the risk of harm from fire is inherent in a fireman's occupation."  
Court
, 72 Ill. 2d at 148.

As the purpose of the fireman's rule was expressed in 
Court
, the supreme court struck a balance by recognizing that the negligent acts of landowners or occupiers are often the cause of fires and that it is the public function of firemen to absorb the risk of injury stemming from those negligent acts.  However, the supreme court has never stated that it is the duty of firemen to absorb the risk created by the willful and wanton misconduct of landowners or occupiers.  In fact, as far back as 
Gibson
, the supreme court stated that a fireman could recover for the infliction of willful or intentional injury.  See 
Dini
, 20 Ill. 2d at 416.  We also note that, under the Local Governmental and Governmental Employees Tort Immunity Act (745 ILCS 10/5--106 (West 2000)), while a firefighter is insulated from liability for his or her negligent acts, a fireman is liable for his or her own acts of willful and wanton misconduct committed while acting within the scope of employment.       

Furthermore, among other jurisdictions we have surveyed that have adopted the fireman's rule, most articulate it in the same fashion as our supreme court in 
Washington
.  See 62 Am. Jur. 2d 
Premises Liability
 §432 (1990).  However, these jurisdictions favor recovery where the owner or occupier is liable for willful or wanton misconduct.  See Annotation, L. Scheafer, 
Liability of Owner or Occupant of Premises to Fireman Coming Thereon in Discharge of His Duty
, 11 A.L.R.4th 597 (1982); see also 
Minnich v. Med-Waste, Inc.
, 349 S.C. 567, 564 S.E.2d 98 (2002).  In fact, 
Luetje
 is widely cited but also criticized for the proposition that the fireman's rule bars suits when a firefighter is injured due to willful and wanton misconduct by an owner or occupier.  For instance, in 
Kelly v. Tucci
, 27 Conn. L. Rptr. 649 (2000), the Superior Court of Connecticut cited 
Luetje
 and stated: "This court, however, is of the opinion that not allowing officers to sue someone who intentionally injures them is unacceptable in civilized community."  
Kelly
, 27 Conn. L. Rptr. at 649. 

In the end, we reiterate the supreme court's holding from 
Washington
, which provides: while an owner or occupier owes a duty of reasonable care to maintain his property so as to prevent injury occurring to a fireman from a cause independent of the fire, he is not liable for negligence in causing the fire itself.  
Washington
, 66 Ill. 2d at 108.  However, we decline to follow 
Luetje
.  Rather, we conclude that the immunity of the fireman's rule does not protect a defendant whose willful and wanton misconduct created the emergency or danger that caused injury to a fireman.

In accordance with our holding, we affirm the trial court's dismissal of plaintiff's negligence claim against defendants.  However, on the matter of plaintiff's claim of willful and wanton misconduct, plaintiff alleges that defendants failed to expose or locate the live gas mains, which they knew were in the same utility easement, before workers began boring into the ground.  We find that plaintiff's claim of willful and wanton misconduct is not barred by the fireman's rule.  Accordingly, we reverse the trial court's dismissal of this claim.  We, however, express no opinion on the merits. 

The second issue in this case is whether defendants' status as contractors working on behalf of the landowner/occupier, Western, precludes them from availing themselves of the protections of the fireman's rule.  As we stated above, in 
Court
, the supreme court noted the public policy considerations that shaped the fireman's rule in Illinois.  
Court
, 72 Ill. 2d at 148.  The fireman's rule rests not merely upon the recognition that the risk of injury is inherent in firefighting, but upon a policy consideration that limits the duty of an owner or occupier.  
Court
, 72 Ill. 2d at 148. Thus, because the rule's grounding is found in a compromise of rights between firemen and owners or occupiers, the rule cannot be expanded beyond its limited context of landowner/occupier liability.  
Court
, 72 Ill. 2d at 148.   

Citing 
Esser v. McIntyre
, 169 Ill. 2d 292, 302 (1996), plaintiff correctly asserts that, in order for someone to be an occupier of land, he must occupy the land with the intent to control it.  Plaintiff maintains that defendants do not meet this definition of occupation and, thus, cannot claim the benefits of the fireman's rule.  We believe that plaintiff misses the point on this argument. 

As the holder of an easement, Western was the owner of an interest in real estate entitled to the protections of the fireman's rule.  See 
McDermott v. Metropolitan Sanitary District
, 240 Ill. App. 3d 1, 20 (1992).  The important determination to be made here is whether defendants' connection with Western allows them to avail themselves of the immunity provided by the fireman's rule.  To make this determination, we look at the Restatement (Second) of Torts, section 383, which states: 

"One who does an act or carries on an activity upon land on behalf of the possessor is subject to the same liability, and enjoys the same freedom from liability, for physical harm caused thereby to others upon and outside of the land as though he were the possessor of the land."  Restatement (Second) of Torts §383 (1965).

See 
Corcoran v. Village of Libertyville
, 73 Ill. 2d 316, 323 (1978); 
Deibert v. Bauer Brothers Construction Co.
, 188 Ill. App. 3d 108, 109 (1989).  Defendants' status as a servant or independent contractor in this matter is irrelevant.  See Restatement (Second) of Torts §383, Comment a (1965). 

Here, in accordance with section 383, defendants were carrying on their drilling activity to lay cable within the utility easement on behalf of the possessor, Western, and thus they share the same freedom from liability as Western.  Accordingly, we conclude that defendants come within the scope of the protections of the fireman's rule.

Next, plaintiff argues that the development of the deliberate encounter doctrine and public policy considerations abrogate the fireman's rule.  We start by noting that the court in 
Smithers v. Center Point Properties Corp.
, 318 Ill. App. 3d 430, 441 (2000), recently rejected these same arguments.  

Under the deliberate encounter doctrine, a landowner is responsible for an otherwise open and obvious danger where he or she has reason to believe that an invitee will proceed to encounter the danger because the advantages of doing so would outweigh the apparent risk.  
LaFever v. Kemlite Co.
, 185 Ill. 2d 380, 391 (1998).  In 
Smithers
, the court observed that the duty to deliberately encounter certain dangers is an inherent part of a firefighter's responsibility.  
Smithers
, 318 Ill. App. 3d at 442, citing 
Court
, 72 Ill. 2d at 148.  Thus, the court found that the fireman's rule subsumes the deliberate encounter doctrine because deliberately encountering dangers is known to firefighters to be an inherent part of their job.  
Smithers
, 318 Ill. App. 3d at 442.  We agree.

Plaintiff also argues that public policy mandates the abrogation of the fireman's rule.  Specifically, he urges that the rule encourages landowners to be careless in the maintenance of their property and that firemen do not freely interject themselves into danger because they are duty bound to fight fires.  

As we discussed in depth above, in cases such as 
Court
 and 
Dini
, the supreme court has been very cognizant of the public policy considerations underlying the application of the fireman's rule and have formulated the fireman's rule accordingly.  See 
Smithers
, 318 Ill. App. 3d at 442.  Thus, we note that it is the duty of this court to follow the decisions of our supreme court.  See 
Schusse v. Pace Suburban Bus Division of the Regional Transportation Authority
, 334 Ill. App. 3d 960, 965 (2002).  Moreover, we find that the rule strikes an appropriate balance between the duty of an owner or occupier of property to maintain his or her premises in a reasonably safe condition and a fireman's assumption of the risk of harm from dangers inherent in a fireman's occupation.  See 
Smithers
, 318 Ill. App. 3d at 442.           

Last, plaintiff maintains that the fireman's rule violates his right of equal protection under the law.  With respect to this argument, he contends that NICOR employees assigned to confront the leaking gas main were subject to the same risk of harm as himself.  Thus, he argues, it is an equal protection violation to extend the rule to him while the NICOR employees involved here are beyond the rule's scope.         

The analysis applied in assessing an equal protection claim is the same under both the United States and Illinois Constitutions.  
Jacobson v. Department of Public Aid
, 171 Ill. 2d 314, 322 (1996).  The guarantee of equal protection requires that similarly situated individuals be treated in a similar manner.  
Jacobson
, 171 Ill. 2d at 322.  Equal protection challenges not affecting a suspect class or fundamental right are subject to the rational basis test.  
Jacobson
, 171 Ill. 2d at 323.  Under the rational basis test, the court simply inquires whether the method or means employed to achieve a particular purpose is rationally related to that goal.  
Jacobson
, 171 Ill. 2d at 323. 

The supreme court has announced a clear purpose for placing firemen in a unique class under the fireman's rule.  See 
Court
, 72 Ill. 2d at 148.  Firemen come within a special class of public servants who receive specialized training to anticipate and encounter risks associated with fires.  
Smithers
, 318 Ill. App. 3d at 442.   

Here, plaintiff, an EMT employed in public service with the LFPD, possessed specialized training and unique experience to anticipate and manage risks associated with emergency situations.  We believe that placing plaintiff in a different class than NICOR employees who do not possess comparable training or experience is rationally related to the purpose underlying the fireman's rule.  Accordingly, we reject plaintiff's equal protection challenge.    

For the aforementioned reasons, we affirm the trial court's dismissal of plaintiff's negligence claim against defendants.  However, we reverse the trial court's dismissal of plaintiff's claim of willful and wanton misconduct.  Accordingly, the judgment of the circuit court of Du Page County is affirmed in part and reversed in part, and the cause is remanded. 

Affirmed in part and reversed in part; cause remanded.

O'MALLEY, P.J., and CALLUM, J., concur. 

Supplemental Opinion Upon Denial of Rehearing

JUSTICE BOWMAN delivered the opinion of the court:   

In a petition for rehearing, plaintiff has brought to our attention a new statute that may have abolished the fireman's rule.  We use the word "may" because, facially, it is not quite clear to us what the statute intends.  The statute may intend to impose a duty of reasonable care upon an owner/occupier where none existed under the common law.  Alternatively, it may serve as an attempt to codify the portion of the fireman's rule that places upon an owner/occupier a duty of reasonable care to maintain his or her property so as to prevent injury to a fireman from a cause independent of the emergency.  At the moment, the legislative materials that might ordinarily allow us to gain some insight into the legislature's intent are not yet available.  However, we need not belabor the issue by resorting to a long statutory interpretation.  Regardless of which interpretation we give the new statute, the result is the same.  Defendants cannot be held culpable for their purported negligent acts in causing the explosion.

The new statute came into effect on July 22, 2003, adding section 9f of the Fire Investigation Act (Pub. Act 93--233, §5, eff. July 22, 2003 (adding 425 ILCS 25/9f)).  Section 9f provides:

"The owner or occupier of the premises and his or her agents owe fire fighters who are on the premises in the performance of their official duties conducting fire investigations or inspections or responding to fire alarms or actual fires on the premises a duty of reasonable care in the maintenance of the premises according to the applicable fire safety codes, regulations, ordinances, and generally applicable safety standards, including any decisions by the Illinois courts.  The owner or occupier of the premises and his or her agents are not relieved of the duty of reasonable care if the fire fighter is injured due to the lack of maintenance of the premises in the course of responding to a fire, false alarm, or his or her inspection or investigation of the premises."  Pub. Act 93--233, §5, eff. July 22, 2003 (adding 425 ILCS 25/9f).                         

Section 9f goes on to state that this provision applies to "all causes of action that have accrued, will accrue, or are currently pending before a court of competent jurisdiction, including courts of review."  Pub. Act 93--233, §5, eff. July 22, 2003 (adding 425 ILCS 25/9f).  Defendants maintain that the provision applying section 9f retroactively is unconstitutional.

Recently, in 
Commonwealth Edison Co. v. Will County Collector
, 196 Ill. 2d 27 (2001), our supreme court adopted the approach to retroactivity endorsed by the United States Supreme Court in 
Landgraf v. USI Film Products
, 511 U.S. 244, 128 L. Ed. 2d 229, 114 S. Ct. 1483 (1994).  
Commonwealth Edison Co.
, 196 Ill. 2d at 38-40.  Under the 
Landgraf
 test, a clear expression by the legislature regarding a statute's temporal reach should be given effect, unless the constitution prohibits it.  
Commonwealth Edison Co.
, 196 Ill. 2d at 38.  The old approach, as set forth in 
First of America Trust Co. v. Armstead
, 171 Ill. 2d 282, 289 (1996), provided that an amended law could not be retroactively applied if the application of the change in the law would affect a vested right.  
Vested rights are interests that are protected from legislative interference by Illinois's due process clause (Ill. Const. 1970, art. I, §2).  
Armstead
, 171 Ill. 2d at 289.  "While a vested right is difficult to define, it has frequently been defined to consist of something more than a mere expectation, based upon an anticipated continuance of the existing law, and it must have become a title, legal or equitable, to the present or future enjoyment of property, or to the present or future enjoyment of the demand, or a legal exception from a demand made by another."  
Harraz v. Snyder
, 283 Ill. App. 3d 254, 262 (1996).

The most factually relevant case to the present matter is 
Henrich v. Libertyville High School
, 186 Ill. 2d 381 (1998).  There, a student injured in physical education class sued the school district based on its negligent and willful and wanton misconduct.   
Henrich
, 186 Ill. 2d at 384-85.  After his claims were dismissed, the plaintiff challenged the dismissal of his claim alleging willful and wanton misconduct.  
Henrich
, 186 Ill. 2d at 386.  In its initial opinion, the supreme court determined that the Tort Immunity Act barred plaintiff's willful and wanton claim.  
Henrich
, 186 Ill. 2d at 395.  

However, a day before the court issued its opinion, the legislature amended the Tort Immunity Act to permit claims of willful and wanton misconduct against school districts.  
Henrich
, 186 Ill. 2d at 403.  The plaintiff argued that the amended statute should be applied, thereby eliminating the school district's immunity.    
Henrich
, 186 Ill. 2d at 403.  In a supplemental opinion, the court decided that the amended statute did not apply because the school district had a vested right to total immunity as provided by the unamended statute.    
Henrich
, 186 Ill. 2d at 404.  The court explained that an exemption from a demand or an immunity from prosecution in a suit is as valuable to a party as the right to enforce a demand or proceed with prosecution is to another party.  
Henrich
, 186 Ill. 2d at 404.  Thus, a vested ground of defense, like a vested cause of action, is fully protected from being cut off or destroyed by an act of the legislature.  
Henrich
, 186 Ill. 2d at 404-05.  The court concluded that the amended statute "cannot reach back and take that vested right away, impose a new duty on the school district, and breathe life into this previously barred claim."   
Henrich
, 186 Ill. 2d at 405. 

Later, in 
Commonwealth Edison Co.
, the supreme court expounded upon its original holding in 
Henrich
 in light of the fact that it had adopted the 
Landgraf
 approach to retroactivity. 
Commonwealth Edison Co.
, 196 Ill. 2d at 45-49.  In the court's view, 
Henrich
 remained relevant insofar as it defined the interests that are protected from legislative interference by the due process clause of the Illinois Constitution.  
Commonwealth Edison Co.
, 196 Ill. 2d at 47.  However, the court added that there is more to assessing whether the due process clause has been violated than merely determining whether a right is vested or nonvested.  
Commonwealth Edison Co.
, 196 Ill. 2d at 47. Rather, the court explained as follows:

" '[T]he question of the validity of the application of a statute rests on subtle judgments concerning the fairness or unfairness of applying the new statutory rule to affect interests which accrued out of events which transpired when a different prior rule of law was in force.  One fundamental consideration of fairness is that settled expectations honestly arrived at with respect to substantial interests ought not to be defeated. [Citation.] The determination of whether the application of the statute unreasonably infringes upon the rights of those to whom it applies involves a balancing and discrimination between reasons for and against the application of the statute to this class of individuals.' "  
Commonwealth Edison Co.
, 196 Ill. 2d at 47, quoting 
Moore v. Jackson Park Hospital
, 95 Ill. 2d 223, 241-42 (1983). 

In the end, the court concluded that 
Henrich
 had been correctly decided.  
Commonwealth Edison Co.
, 196 Ill. 2d at 48-49.  It explained that applying the amendment to the Tort Immunity Act would have meant imposing a period of retroactivity on the school district of almost four years.  
Commonwealth Edison Co.
, 196 Ill. 2d at 48.  It also would have meant resurrecting a claim that had previously been barred in its entirety.  
Commonwealth Edison Co.
, 196 Ill. 2d at 48.  Thus, the "subtle judgments concerning fairness" required that the school district's settled expectations not be disturbed.  
Commonwealth Edison Co.
, 196 Ill. 2d at 48-49. 
           

In the simplest scenario of the present case, section 9f can be viewed as an attempt by the legislature to codify the portion of the fireman's rule that places upon an owner/occupier a duty of reasonable care to maintain his or her property so as to prevent injury to a fireman from a cause independent of the emergency.  See 
Washington v. Atlantic Richfield Co.
, 66 Ill. 2d 103, 108 (1976).  Section 9f states that an owner or occupier owes "fire fighters who are on the premises in the performance of their official duties *** a duty of reasonable care in the maintenance of the premises."  Pub. Act 93--233, §5, eff. July 22, 2003 (adding 425 ILCS 25/9f).  Arguably, section 9f imposes no greater duty than previously existed under the common-law version of the fireman's rule.  For instance, under the fireman's rule, an owner/occupier already owed a duty of "reasonable care in the maintenance of the premises."  See, 
e.g.
, 
Dini v. Naiditch
, 20 Ill. 2d 406, 416-417 (1960) (stating that "an action should lie against a landowner for failure to exercise reasonable care in the maintenance of his property").  Moreover, section 9f does not expressly declare that the common-law fireman's rule has been abolished.  This is in contrast to other statutes like section 2 of the Premises Liability Act (740 ILCS 130/2 (West 2002)), which expressly abolished the common-law distinction between invitees and licensees.  740 ILCS 130/2 (West 2002).  Thus, if section 9f merely codifies the fireman's rule, it does not impose any additional duties upon defendants.  Consequently, it is unnecessary to discuss this interpretation any further.       

The important question posed by section 9f is whether the duty of reasonable care extends to the scenario where a lack of proper maintenance causes the emergency situation in which the fire fighter is hurt.  To answer this question, section 9f can be viewed as imposing a broad duty of care, covering all situations, even where no duty previously existed.  The second sentence of section 9f significantly advances this interpretation.  There, section 9f states that an owner/occupier is not "relieved of the duty of reasonable care if the fire fighter is injured due to a lack of maintenance of the premises in the course of responding to a fire, false alarm, or his or her inspection or investigation of the premises."  Pub. Act 93--233, §5, eff. July 22, 2003 (adding 425 ILCS 25/9f).  Unfortunately, if this language serves as an attempt to abolish the fireman's rule, section 9f incorporates an incorrect conception of the common-law rule.  The fireman's rule does not "relieve" an owner/occupier of a duty of reasonable care.  The word "relieve" suggests that a duty, already in place, is being removed, or that the owner/occupier is availing himself of a defense to the imposition of a duty.  However, "[u]nlike an affirmative defense, the 'fireman's rule' does not presuppose the existence of an otherwise valid cause of action."  
Vroegh v. J&M Forklift
, 165 Ill. 2d 523, 530 (1995).  Rather, the rule "goes to the threshold question of whether an owner or occupier of land has any duty to fire fighters injured while fighting a fire on his premises.  Where the rule applies, it means that no duty is imposed by the law."  
Vroegh
, 165 Ill. 2d at 530.  Nonetheless, if section 9f does intend to abolish the fireman's rule, it cannot be retroactively applied to defendants to impose a duty upon them that did not previously exist. 

Defendants in this case had a vested right to total immunity from the prosecution of plaintiff's negligence claim.  See 
Henrich
, 186 Ill. 2d at 404; see also 
Harraz
, 283 Ill. App. 3d at 256-57 (applying a vested rights analysis where the vested right was derived from the common law, and later taken away by a statute).  Under the fairness considerations of 
Commonwealth Edison Co.
, plaintiff's cause of action accrued on April 29, 1999, the date of the explosion.  Section 9f's effective date was July 22, 2003.  We would be imposing a new duty upon defendants approximately four years and three months after the accident occurred.  By comparison, in 
Commonwealth Edison Co.
's examination of 
Henrich
, the court found it unreasonable to retroactively impose a duty where the amendatory statute took effect less than four years after the student's cause of action accrued against the school district.   
Commonwealth Edison Co.
, 196 Ill. 2d at 48.  The supreme court further found it unreasonable that a claim that was once barred should be resurrected.  
Commonwealth Edison Co.
, 196 Ill. 2d at 48.  We have a similar situation in this case.  Thus, the "subtle judgments concerning fairness" require that defendants' settled expectations not be disturbed.  See  
Commonwealth Edison Co.
, 196 Ill. 2d at 48-49.  We conclude that defendants' due process rights would be violated by retroactively using section 9f to allow plaintiff's negligence claim to proceed.  Accordingly, we refuse to do so. 

O'MALLEY, P.J., and CALLUM, J., concur.